UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>SELBOURNE WAITE,<br>                    Defendant. | 07 CR 0003 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Selbourne Waite's motion pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i). (Dkt. no. 895.) The Government opposed (dkt. no. 898), and Defendant replied (dkt. no. 905). For the reasons set out below, the motion is denied.

## I. Background

The Court adopts the Background section of the Court of Appeals' decision in United States v. Selbourne Waite, 12 F.4th 204 (2d Cir. 2021):

A. Offense Conduct

> From approximately 1997 to 2007, Waite was a member of the Dekalb Avenue Crew (the "Crew"), a criminal organization centered around Dekalb Avenue in the Bronx that engaged in extensive drug trafficking, armed robberies, and murders. During that time, Waite sold drugs with other members of the Crew and regularly carried guns to protect the Crew's drug business. Waite also participated in numerous actual and attempted armed robberies, four of which are relevant to this appeal.

1

First, on October 4, 2004, Waite and another Crew member attempted to rob a man believed to have large amounts of cocaine and cash in a safe in his house. The victim was home, however, and when he confronted the robbers, Waite shot at him but missed. Waite and his co-conspirator successfully made away with the safe, but it turned out to be empty.

Second, on January 31, 2005, Waite and three other Crew members robbed the apartment of a rival drug trafficker. They entered the apartment brandishing firearms, and when they encountered a young woman babysitting the drug dealer's infant child, they tied up the babysitter and held her at gunpoint, demanding to know where the drug dealer's money was stashed. The robbers ultimately stole $20,000 in cash.

Third, on March 24, 2005, Waite and two other Crew members committed a robbery on Paulding Avenue in the Bronx. After Waite and the Crew members pulled up next to the victim in their car, Waite got out of the car carrying a gun and demanded money from the victim. When the victim resisted, Waite fired several shots as a threat. Waite ultimately took a bag from the victim containing $8,000 to $10,000 in cash.

Finally, on June 9, 2005, Waite and two other Crew members attempted to rob three suspected drug dealers of approximately five pounds of marijuana. When the robbery went awry, one of Waite's co-conspirators fired his gun in the air to give Waite and the other co-conspirator an opportunity to get away.

B. Indictment and Trial

On February 20, 2008, Waite and other members of the Crew were charged in a thirty-five-count superseding indictment. With respect to each of the four completed and attempted robberies discussed above, Waite was charged with two counts of Hobbs Act robbery

(and aiding and abetting the same), in violation of 18 U.S.C. §§ 1951 and 2; two counts of attempted Hobbs Act robbery (and aiding and abetting the same), in violation of 18 U.S.C. §§ 1951 and 2; and four counts of using a firearm in furtherance of those four crimes of violence, all in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

Waite was also charged with: (1) a substantive violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c); (2) RICO conspiracy, in violation of 18 U.S.C. § 1962(d); (3) conspiracy to traffic narcotics, in violation of 21 U.S.C. § 846; (4) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; and (5) use of a firearm in furtherance of the charged narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Finally, Waite was charged with four crimes premised on the murder and attempted robbery of Bunny Campbell, a suspected rival drug dealer: (1) murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; (2) attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2; (3) use of a firearm in furtherance of a crime of violence (the attempted Hobbs Act robbery), in violation of §§ 924(c)(1)(A) and 2; and (4) causing death with a firearm in the course of a § 924(c) offense, in violation of 18 U.S.C. §§ 924(j)(1) and 2.[1]

Waite proceeded to trial, and he was convicted on all counts except for those involving the murder and attempted robbery of Bunny Campbell. As relevant to this appeal, the jury was instructed on aiding-and-abetting liability for all of the Hobbs Act robbery

---

[1] Waite was also charged in the superseding indictment with another robbery, as well as a § 924(c) count predicated on that robbery, but Waite was not tried on these counts, and they were subsequently dismissed along with all other open counts from earlier indictments at the time of Waite's sentencing.

3

offenses and attempted Hobbs Act robbery offenses. The jury verdict form did not require the jury to specify whether Waite's § 924(c) convictions were predicated on an aiding-and-abetting theory or on Waite's direct liability for those offenses.

C. Original Sentencing, First Appeal, and Resentencing

On August 22, 2011, the district court (Barbara S. Jones, J.) sentenced Waite to 125 years' imprisonment, consisting of a mandatory minimum term of 20 years' imprisonment for the narcotics conspiracy, a mandatory minimum consecutive term of 105 years' imprisonment for the five § 924(c) convictions, and concurrent sentences of time served on the remaining RICO and Hobbs Act robbery counts. In calculating this original sentence, the district court found that the Fair Sentencing Act of 2010, Pub. 111-220, 124 Stat. 2372 (2010) ("Fair Sentencing Act"), did not apply retroactively to Waite's underlying offense conduct, which was consistent with this Court's precedent at the time. See United States v. Acoff, 634 F.3d 200, 202 (2d Cir. 2011). Accordingly, the district court determined that Waite's narcotics conspiracy conviction had a mandatory minimum sentence of 20 years instead of 10 years.

Waite appealed, and on August 24, 2016, this Court affirmed his convictions and sentence in all respects except one: on appeal, the government conceded that the Supreme Court's decision in Dorsey v. United States, 567 U.S. 260 (2012), made clear that the Fair Sentencing Act applied retroactively to Waite's narcotics conspiracy conviction. Lee, 660 F. App'x at 22. We therefore remanded for resentencing in light of Dorsey. Id. at 22-23.

On March 1, 2018, the district court (now Loretta A. Preska, J.) resentenced Waite to a term of 115 years' imprisonment. Consistent with this Court's decision and Dorsey, the

4

district court imposed a 10-year mandatory minimum term of imprisonment for Waite's narcotics conspiracy conviction. But other than this one change, the district court imposed the same sentence–including the mandatory minimum consecutive sentences on the § 924(c) counts–that it had originally imposed in 2011.

D. Present Appeal, the First Step Act, and Davis

Waite again appealed from his conviction and sentence, though not without some logistical difficulties. While Waite's pro se notice of appeal is dated March 3, 2018, it was not filed in the district court until September 5, 2018. According to an affidavit submitted to the district court by Waite's trial counsel, Waite–contrary to his counsel's advice–had mailed his pro se notice of appeal from the Metropolitan Detention Center "to the Clerk of Court at '1500 Pearl Street.'" Aff. of Susan V. Tipograph ¶ 4, United States v. Waite, No. 07-cr-00003 (S.D.N.Y. Jan. 24, 2019), ECF No. 792-1. After Waite was returned to his designated long-term detention facility, his pro se notice of appeal was returned to him on August 14, 2018 unopened for having an incorrect address. Id. ¶ 5. Waite then re-mailed the notice of appeal to the correct address–at 500 Pearl Street–and it was docketed on September 5, 2018. Id. ¶ 6.

When Waite first filed his notice of appeal in September 2018, his original counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that Waite's appeal presented no non-frivolous issues worthy of review. While Waite's appeal has been pending, however, two key developments have significantly changed the legal landscape surrounding 18 U.S.C. § 924(c).

First, on December 21, 2018, the First Step Act was signed into law. See Pub. L. No. 115-391, 132 Stat. 5194. As relevant here,

5

§ 403(a) of the First Step Act eliminated so-called § 924(c) "stacking," whereby multiple § 924(c) charges in the same indictment could yield enhanced consecutive mandatory minimum sentences under § 924(c)(1)(C) if a defendant was convicted on more than one of the charged § 924(c) counts. See United States v. Eldridge, 2 F.4th 27, 40 (2d Cir. 2021). When Waite was originally sentenced in 2011 (and when he was resentenced in March 2018), his second and subsequent § 924(c) convictions each carried an additional 25-year mandatory minimum consecutive sentence. If Waite had been sentenced after passage of the First Step Act, however, his second and subsequent § 924(c) convictions would have required consecutive mandatory minimum sentences of five years each.[2] See 18 U.S.C. § 924(c)(1)(A)(i); see also id. § 924(c)(1)(C) (as amended by Section 403(a) of the First Step Act, 132 Stat. at 5221-22). The upshot is this: if Waite were convicted of precisely the same charges and sentenced for the first time today, he would face a mandatory minimum term of 30 years' imprisonment rather than 115 years' imprisonment.[3]

Second, on June 24, 2019, the Supreme Court issued its decision in United States v. Davis, 139 S. Ct. 2319. In Davis, the Supreme Court held that one of § 924(c)'s definitions of a predicate crime of violence, the so-called "residual clause," 18 U.S.C. § 924(c)(3)(B), was unconstitutionally vague. 139 S. Ct. at 2323-24, 2336. After Davis,

---

[2] Although Waite's superseding indictment alleged that a gun was either brandished or fired in the commission of each of the four predicate crimes of violence – which would have yielded seven- or ten-year consecutive sentences, respectively, see 18 U.S.C. § 924(c)(1)(A)(ii)-(iii) – the jury was not asked to issue a special verdict finding that the guns were brandished or fired. Consequently, the mandatory minimum consecutive sentence for each would now be five years.
[3] This calculation assumes that Waite was properly sentenced to a 10-year mandatory minimum sentence on the narcotics conspiracy count, which Waite does not challenge on appeal.

6

> only offenses that qualify as crimes of violence under the still-valid "elements clause," 18 U.S.C. § 924(c)(3)(A), can serve as predicate crimes of violence under § 924(c)(1)(A). See Eldridge, 2 F.4th at 36.
>
> Following these two legal developments, we permitted Waite's original counsel to withdraw and appointed him new appellate counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. We also granted Waite's request to submit a supplemental pro se brief raising additional arguments beyond those in his counseled brief.

United States v. Selbourne Waite, 12 F.4th 204, 207-10 (2d Cir. 2021) (last footnote omitted).

In his second appeal, Defendant argued: 1) his section 924(c) convictions were invalid under United States v. Davis, 139 S. Ct. 2319 (2019); and 2) after passage of the First Step Act, his sentence was not proportional and constituted cruel and unusual punishment. He sought resentencing.

E. Motion for Compassionate Release

The Government reports that Defendant filed his request for compassionate release with the Warden of FCI Cumberland, where he is housed, on March 8, 2021, and that the Warden denied the request on March 25, 2021. (Dkt. no. 898 at 3.) The pending motion was filed in this Court on March 10, 2021. (Dkt. no. 895.) Accordingly, the motion is ripe.

In Defendant's motion for compassionate release under 18 U.S.C. Section 3582(c)(1)(A)(i), he argues that he should be released from custody because of: 1) the lengthy sentence he is

7

serving based on his multiple convictions under 18 U.S.C. Section 924(c); and 2) his risk of suffering severe illness from COVID-19 based on his asthma.

## II. Applicable Law

Motions for Sentence Modifications under 18 U.S.C. § 3582(c)(1)(A)

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" as provided by statute. As relevant here:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Id. The policy statement, which appears at Section 1B1.13 of the Guidelines, provides that a reduction of sentence is permitted if: "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not

8

a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3). The Application Notes of § 1B1.13, in turn, describe multiple ways that a defendant can show an "extraordinary and compelling reason," but only one is relevant here:

(A) Medical Condition of the Defendant.—

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

### III. Discussion

With respect to Defendant's arguments about sentencing under section 924(c), the Court of Appeals has already rejected Defendant's arguments. As to his argument under Davis, the Court held that Defendant's argument was precluded by the Circuit's prior holding in United States v. McCoy, 995 F.3d 32

9

(2d Cir. 2021) which held that: 1) attempted Hobbs Act robbery "'qualifies as a crime of violence' under section 924(c) even after Davis," id. at 55, and "a § 924(c) conviction predicated on aiding and abetting a crime of violence is equal to one predicated on the commission of a crime of violence as a principal." Waite, 12 F.4th at 212 (discussing McCoy). Accordingly, the Court of Appeals held that Defendant Waite's challenges to his section 924(c) convictions were precluded. Id.

With respect to Defendant's other arguments about his sentencing, the Court of Appeals first addressed the proportionality of his 115-year sentence. See id. at 213-14. The Court found that that argument was foreclosed by its Eighth Amendment jurisprudence and cited with approval United States v. Rivera-Ruperto, 852 F.3d 1, 18 (1st Cir. 2017), which it said presented a "challenge nearly identical" to Defendant's and found that "[n]o circuit has held that consecutive sentences under § 924(c) violate the Eighth Amendment." Waite, 12 F.4th at 214. The Court of Appeals held that "the gravity of Waite's offense conduct—which included participating in a racketeering enterprise, conspiring to distribute narcotics and to commit robberies, committing a number of specific robberies, and using firearms in furtherance of those crimes—does not lead to an

10

inference of gross disproportionality." Id. Accordingly, Defendant's proportionality arguments are foreclosed.

With respect to Defendant's First Step Act arguments, the Court of Appeals acknowledged that if Defendant were sentenced today, he would not be subject to the "stacking" of several § 924(c) counts that resulted in his 115-year sentence. Id. at 217. But the Court held that Congress' decision not to make the First Step Act fully retroactive foreclosed Defendant's argument. Id. at 218.

Finally, the Court of Appeals declined to remand for re-sentencing in the absence of error because this case does not fit into the narrow group of cases in which the Court of Appeals has authorized such remand. Id. at 218-19. Accordingly, all of Defendant's sentencing arguments in his petition are foreclosed by the Court of Appeals' recent opinion affirming his 115-month sentence.

The only remaining argument in Defendant's petition is that the risk of severe illness as a result of the COVID-19 pandemic and his asthma present "extraordinary and compelling circumstances warranting release" under section 3582. They do not.

First, according to Defendant's medical records, (Ex. B to dkt. no. 898), it does not appear that he required any medical attention relating to his asthma in 2020 or 2021. Indeed, the

11

medical records indicate that Defendant's asthma was "resolved" on October 2, 2019.  (Id.)

Accordingly, it does not appear that Defendant suffers from "moderate to severe" asthma, which the CDC recognizes might potentially increase chances of severe illness form COVID-19.[4]

Second, the Defendant's immunization record indicates that he was offered but refused the COVID-19 Moderna vaccine on May 5, 2021.  (Ex. A to dkt. no. 898.)  The vaccine is highly effective at preventing severe COVID-19 symptoms.  See Effectiveness of Pfizer-BioNTech and Moderna Vaccines Against COVID-19, available at https://www.cdc.gov/mmwr/volumes/70/wr/mm7018e1.htm (last visited on May 13, 2021) (reporting a 94% effective rate against COVID-19 hospitalization amongst fully vaccinated adults over 65 years old).  Given his refusal to accept the vaccine, the Defendant cannot insist that the dangers posed by the COVID-19 pandemic warrant his release.  See United States v. Robinson, 2021 WL 1565663 (AT), at *3 (S.D.N.Y. Apr. 21, 2021) (explaining

---

[4] See CDC Science Brief: Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidencetable.html (last visited on May 25, 2021); CDC People with Certain Medical Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html (last visited on May 25, 2021).

that compassionate release motions based on COVID-19 filed by inmates who refused the vaccine have been "nearly uniformly denied" in this district and elsewhere (collecting cases)); United States v. Greenlaw, 2021 WL 1277958 (JAW), at *7 (D. Me. Apr. 6, 2021) ("To reward Mr. Greenlaw for his vaccination refusal would create a perverse incentive for defendants like Mr. Greenlaw to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."). Accordingly, Defendant has not presented "extraordinary and compelling circumstances warranting release."

## IV. Conclusion

The Defendant's motion for compassionate release (dkt. no. 895) is denied. The Clerk of the Court shall close the open motion.

SO ORDERED.

Dated: New York, New York
February 9, 2022

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge

13